HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CYNTHIA RAYNOR,<br><br>                    Plaintiff,<br><br>     v.<br><br>UNITED OF OMAHA LIFE INSURANCE COMPANY,<br><br>                    Defendant. | CASE NO. C14-5252 RBL<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>[DKTS # 25 & 26] |

THIS MATTER is before the Court on Defendant United of Omaha and Plaintiff Cynthia Raynor's cross Motions for Summary Judgment. [Dkts # 25 & 26]. Both seek a judgment as a matter of law as to whether Raynor's lawsuit was filed within her long-term disability policy's three-year suit limitations period.

Raynor became disabled in 2008. For two years, she received benefits under her Omaha policy. In February, 2010, Omaha asked Raynor to submit updated disability information by April 1, 2010, to determine whether she was eligible to continue receiving benefits. Raynor sent the information, and Omaha determined she was no longer eligible. It terminated her benefits on December 3, 2010. It notified Raynor on December 6, 2010, that she had 180 days to appeal this decision.

ORDER - 1

On March 3, 2011, Omaha gave Raynor an additional 180 days to provide more support for her appeal. She did so, but her appeal was ultimately denied. On March 26, 2014, Raynor sued, alleging that Omaha wrongfully terminated her benefits.

Omaha's policy includes a three year suit limitation provision: any suit must be filed no later than "three years after the date written proof of loss is required." [Dkt. # 27-1, p. 59].

Raynor argues that the policy's "proof of loss" definition is ambiguous and claims that she reasonably interprets it to include time to submit any information to support a disability claim. She claims that the "date the proof of loss [was] required" is the date (as extended by Omaha) that she was permitted to provide information supporting her appeal; in other words, the last appeal deadline Omaha imposed is "the date proof of loss was required."

Omaha argues that its policy clearly defines "proof of loss," and it was *required* in this case by April 1, 2010. It argues that because Raynor's claim was filed far more than three years later, it is time barred.

## I.   BACKGROUND

Raynor worked as a real estate agent in Washington and Oregon until March 2008. She submitted a long-term disability claim to Omaha and was granted benefits on June 3, 2008. Omaha's approval reminded her that it could reevaluate her claim in the future: "[a] claim form/medical records are required periodically to certify your continued disability under this policy. When this information is necessary, you will be notified by United of Omaha and the necessary forms will be mailed." Dkt. #20, p5.

To submit a proof of loss under the policy, an insured must (1) request a claim form within 20 days of the loss or as soon as possible, (2) complete the claim form or give a written statement about the loss, and (3) have her employer and physicians complete their portions of the form and send it directly to Omaha:

## PAYMENT OF CLAIMS

### How To File Claims

It is important for You to notify Us of Your claim as soon as possible so that a claim decision can be made in a timely manner. Before Your claim can be considered, We must be given a written proof of loss, as described below. In the event of Your death or incapacity, Your beneficiary or someone else may give Us the proof.

### Proof of Loss Requirements

1. First, request a claim form from the Plan Administrator or from Us.

   This request should be made:

   (a) within 20 days after a loss occurs; or

   (b) as soon as reasonably possible.

   When We receive the request, We will send a claim form for filing proof of loss. If You do not receive the form within 15 days of Your request, You can meet the proof of loss requirement by giving Us a written statement of what happened. Such statement should include:

   (a) that You are under the Regular Care of a Physician;

   (b) the appropriate documentation of Your job duties at Your regular occupation and Your Basic Monthly Earnings;

   (c) the date Your Disability began;

   (d) the cause of Your Disability;

   (e) any restrictions and limitations preventing You from performing Your regular occupation;

   (f) the name and address of any Hospital or institution where You received treatment, including attending Physicians.

2. Next, You and Your employer must complete and sign Your sections of the claim form, and then give the claim form to the Physician. Your Physician should fill out his or her section of the form, sign it, and send it directly to Us.

3. The claim form should be sent to Us within 90 days after the end of Your Elimination Period; or as soon as reasonably possible. If it is not possible to give Us proof within 90 days, it must be given to Us no later than one year after the time proof is otherwise required, unless the claimant is not legally capable.

### How Claims are Paid

Benefits will be paid monthly after We receive acceptable proof of loss.

Dkt. # 27-1, Ex. 1, p. 53. The policy also permits an insured to appeal an adverse coverage determination. It allows the policyholder "the opportunity to submit written comments, documents, records, and other information relating to the claim" and takes into account all information related to the claim. Dkt. # 27-1, Ex. 1, p. 56-57.

On February 23, 2010, Omaha informed Raynor that it was "reviewing her claim to determine if benefits should continue" beyond two years[1]. Dkt #20, Ex. 2, p. 9. Its letter enclosed various forms for Raynor and her doctors to complete. It also informed her that Omaha might contact her medical providers for additional information. Omaha requested that she "return all paperwork to us by April 1, 2010" so that "a timely decision is made for your . . . benefits." The letter did not describe the documentation Omaha was seeking as a "proof of loss" under its policy. On April 2, 2010, Omaha wrote a follow up letter requesting the same information, this time seeking a response by May 3, 2010.

Raynor provided her medical records and several statements from her doctors to Omaha between April and November 2010. Omaha terminated Raynor's benefits on December 3, 2010. Its letter told her she could appeal this decision if she submitted "comments and views of the issues and any additional documentation, records or other information" within 180 days. Dkt. # 27-3, p16. On March 30, 2011, Omaha gave Raynor a 180-day extension. Omaha wrote two more letters requesting additional information to support her appeal, with the final request due by February 22, 2012. Omaha denied Raynor's appeal on April 27, 2012. She filed this lawsuit on March 26, 2014.

Omaha argues that the "Proof of Loss Requirements" are clearly defined in the policy, and its February 2010 letter required Raynor to file a proof of loss by April 1, 2010, and Raynor had three years from that date to sue. It argues that offering to review supplemental information, permitting appeals of adverse coverage determinations, and allowing supplemental information

---

[1] Omaha's long term disability benefits policy provided for this "revisiting" of the insured's disability after two years, because the standard for "disability" was different after that time. Omaha claims that to obtain long term benefits under the policy the insured had to provide two proofs of loss—one when she initially became disabled, in 2008, and another when (and if) she claimed she was still unable to perform any gainful work, two years later.

in support of appeals are not new "dates" upon which the initial "proof of loss" is "required. In short, it measures the three year period from the start of the claims process, not the last date it permits an insured to submit supplemental information in support of an appeal of an adverse decision.

Raynor argues that the policy did not define "proof of loss," and her reasonable interpretation is that the suit limitation period is triggered on the last date she is permitted to submit information to support her disability claim (or appeal). Because Oregon resolves ambiguities in the insured's favor, she claims her interpretation must be used over Omaha's.

Alternatively, Raynor argues that her suit was timely even under Omaha's interpretation, once Oregon's statutory standard contractual provisions—which are missing from the policy— are considered. She argues that these provisions extend Omaha's liability to her; one adds 31 days of beneifiots and another gave her 90 additional days to submit a proof of loss. Taken together, she claims that she had 3 years and 121 days to file suit, and that she did so.

## II.   DISCUSSION

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary

judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### A. When Proof of Loss Was Required

The policy is governed by Oregon law. Interpretation of an insurance policy is a question of law. *Hoffman Construction Co. v. Fred S. James & Co.*, 836 P.2d 703, 706 (Or. 1992).

Courts determine the intent of the policy by examining its terms. *Id*. "When the language of the contract is not ambiguous, the policy is interpreted in accordance with its unambiguous terms." *Safeco Ins. Co. of Oregon v. Masood,* 330 P.3d 61, 64 (Or. Ct. App. 2014). If the policy does not define the term, the court looks to the term's ordinary meaning. *Gonzales v. Farmers Ins. Co.*, 196 P.3d 1, 3 (Or. 2008). The court also reviews "the particular context in which that term is used in the policy and the broader context of the policy as a whole." *Hoffman*, 836 P.2d at 706. If the term has only one plausible interpretation, the court applies that interpretation and conduct no further analysis. *Gonzales*, 196 P.3d at 3. If, after those steps, the term remains susceptible to two or more reasonable interpretations, the court resolves any doubt as to the meaning of that term against the insurer. *Id*.

Oregon has not specifically defined "proof of loss." Oregon courts have determined that the purpose of the initial proof of loss is to "afford the insurer an adequate opportunity for investigation, to prevent fraud and imposition upon it, and to enable it to form an intelligent estimate of its rights and liabilities before it is obliged to pay." *Zimmerman v. Allstate Property and Cas. Ins. Co.*, 311 P.3d 497, 503 (Or. 2013).[2]

---

[2] This discussion of the purpose of a "proof of loss" was in the context of determining whether an insurer had settled a claim within six month of proof of loss. *See* Or. Rev. Stat. §

Raynor argues that Omaha's policy does not define proof of loss, and that as a result, her reasonable interpretation of what was required must triumph over Omaha's reading. Raynor contends that "proof of loss" includes supplemental information, including the appeal process, because that process allows insureds to submit additional information, in turn allowing Omaha to assess its liability.

Raynor argues that Omaha's communications were ambiguous about what it considered "proof of loss."  Omaha's February and April 2010 letters do not mention "proof of loss;" indeed, they did not actually say that any information was "required."  The letters only ask for additional information within a certain timeframe.  Omaha's December 2010 letter encourages her to "submit information in support of [her] appeal," and its March 2011 letter allowed her to "submit additional information in support of [her] claim."  She argues that her broad the definition of proof of loss fits within Omaha's requests for more information so that it can determine its liabilities, even on appeal.

Omaha argues that "proof of loss" is clearly defined in the policy, and consists of the claims forms it provided to Raynor.  Omaha did so with its February 2010 letter.  Omaha argues that it notified her when she was initially approved that it could periodically request additional information, and was doing just that in February 2010.  Omaha argues the information was expressly "required" "by April 1, 2010."  It argues that Raynor's interpretation is implausible because (as Raynor implicitly concedes) the appeals procedure is *optional*, and therefore cannot be what was *required* for proof of loss.

---

743.429.  *See, also*; *Parks v. Farmers Ins. Co. of Oregon*, 227 P.3d 1127 (Or. 2009); *Dockins v. State Farm Ins. Co.*, 985 P.2d 796 (Or. 1999).

The policy's "definitions" section does not define "proof of loss." But the "Proof of Loss Requirements" section does describe the requirements to submit proof of loss—no particular form is required, but in order to obtain benefits an insured must provide certain information (and supporting documentation) to the insurance company.

Omaha's February (and April) letters informing Raynor that they were re-evaluating her long term disability claim did not expressly inform her that it required an updated "proof of loss," but the information sought was exactly the sort of information Raynor had to file to make her initial claim, and the purpose of the filing— to "afford the insurer an adequate opportunity for investigation, to prevent fraud and imposition upon it, and to enable it to form an intelligent estimate of its rights and liabilities before it is obliged to pay"—was the same. *See Zimmerman,* 311 P.3d at 503.

Omaha's February 2010 letter told Raynor that, in order to continue her benefits, she had to provide the updated information by April 1, 2010. It is true that Omaha's February 2010 letter did not mention "proof of loss" or that anything was "required" by April 1, 2010, but it is objectively clear that Raynor had to provide that updated information—that it she was in fact *required* to submit it— in order to continue to receive benefits.

Omaha's interpretation is reasonable, and it is correct. The "proof of loss" documentation it sought in February 2010 had to be submitted by April 2010 – if Raynor was to continue to receive benefits, she was required to provide the proof of loss information by that date.

Raynor's interpretation is not reasonable. She claims she had three years from the last date she was *permitted to supplement her appeal of the adverse coverage determination*—not from the date she was required to demonstrate that she was (still) disabled. This is not consistent

with any reasonable reading of the policy.  The later information was not "required;" it was optional—Raynor could have sued upon learning that Omaha had denied her continued long term disability benefits.

Raynor's "proof of loss" was "required" to be filed no later than May 3, 2013[3].  Her lawsuit challenging the outcome of her benefits claim had to be filed within three years of that date.  It was not and it was not timely.

**B.     Oregon Statutory Provisions do not change the outcome.**

Raynor claims that even if the suit limitation period is triggered by the earlier date (and not by the last day to supplement her appeal), Oregon's statutory model policy provisions still make her lawsuit timely.  She asks the Court to graft those provisions onto her policy, though she concedes they are not otherwise a part of it.

In Oregon, insurers can replace the model provisions with their own, subject to two conditions: (1) the policy must be approved by the Director of the Department of Consumer and Business Services, and (2) the substitute provisions must "not [be] less favorable in any respect to the insured or the beneficiary."  Or. Rev. Stat. § 742.021(1).

A model policy provision requires that an insured can submit written proof of loss "for any periodic payment contingent upon continuing loss *within 90 days after the termination of the period for which the insurer was liable.*"  Or. Rev. Stat. § 743.429 (emphasis added).

This provision is not in Raynor's policy.  Because the provision is missing and the policy cannot be less favorable to Raynor than the statutory model provisions, she argues that this provision becomes part of her policy.  Also, because the purpose of the insurance code is to be

---

[3] The date was initially April 1, 2010, but Omaha unilaterally extended it to May 3, and that is the date the proof of loss was "required." Any suit challenging the coverage determination had to be filed, then, no later than May 3, 2010.

liberally construed toward protecting the benefit of the insurance-buying public and doubts to a meaning must be in favor of the insured, the provision should be included. Or. Rev. Stat. § 731.008, Or. Rev. Stat. § 731.016. Raynor claims this provision would make the last day she could have submitted proof of loss as the last day it *could have been* required.

Raynor claims that the last month Omaha was "liable" was December 2010 because it terminated coverage on December 3, 2010. But Raynor's initial two year benefits period expired in *June* 2010, not December 2010.   Omaha claims that this provision does not apply.  Oregon's Director of the Department of Consumer and Business Services approved the policy, without including the model language.  Thus, Omaha argues that its policy is in compliance with Oregon law, and the model provision should not be added.

And, even if Or. Rev. Stat. § 743.429 does apply, the "period for which [Omaha] was liable" expired June 3, 2010—two years after it initially provided coverage.  Omaha is correct that adding 31, or 90, or 121 days to that date cannot make Raynor's lawsuit timely.  It is not, as a matter of law.

***

Raynor's Motion for Summary Judgment is DENIED.  Omaha's Motion for Summary Judgment is GRANTED, and the case is DISMISSED with prejudice.

IT IS SO ORDERED.

Dated this 17th day of December, 2014.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE